IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

IN RE: ANC RENTAL CORPORATION, et al.

      Debtors

---

ANC RENTAL CORPORATION, et al.

      Appellant           Civil Action No. 04-1428

v.

TARRANT COUNTY, ET AL.

      Appellees          Bankruptcy Case No. 01-11200

---

APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE
HONORABLE MARY F. WALRATH

---

**REPLY BRIEF OF APPELLANT ANC RENTAL CORPORATION, ET AL.**

---

Joseph Grey (No. 2358)
Thomas G. Whalen, Jr. (No. 4034)
STEVENS & LEE, P.C.
1105 North Market Street, Seventh Floor
Wilmington, DE 19801
Telephone: (302) 654-5180
Telecopier: (302) 654-5181

Joseph M. Harrison IV
J.M. HARRISON & ASSOCIATES
1009 C Street, Suite 200
Floresville, Texas 78114-2223
Telephone: (830) 393-0500
Telecopier: (830) 393-4941

ATTORNEYS FOR APPELLANTS

DATED: September 30, 2005

SL1 576551v1/011002.00003

# TABLE OF CONTENTS

**Page**

Table of Authorities ............................................................................ iii

The Bankruptcy Court Unequivocally Created, and Imposed a "Proper Protest" Requirement as to Unpaid 2001 Taxes ......................................................1

Appellees Admit that § 505 Exists to Remedy Protest Defects and Omissions by Failing Debtors ..........................................................................1

ANC's Unadjudicated Protests Do Not Bar Subsequent § 505 Relief ...................2

County Level Unilateral Withdrawn Protests Do Not Override the Federal Bankruptcy Code .......................................................................4

Custom Distribution is Fatally Flawed Precedent .................................................5

Custom Distribution Unquestionably Had No Application to Challenges to Unpaid Taxes ....................................................................................6

Tarrant Appraisal District's Assertions Are Directly Refuted by the Court's Opinion ...................................................................................7

There Was No "Agreement" Between ANC and the Chief Appraiser ....................9

There Were No "Adjudications," Nor Did the Bankruptcy Court So Hold ...........10

TAD and the Tax Authorities Rely on Mutually Inconsistent Positions ...............11

Conclusion ..........................................................................................14

SL1 576551v1/011002.00003

## TABLE OF AUTHORITIES

### *Cases*

*City of Amarillo v. Eakens*, 399 F.2d 541 (5th Circuit 1968)................................13

*In re Custom Distribution Services, Inc.*,  224 F.3d 235 (3rd Cir. 2000)........2, 5, 6

*In re Blue Cactus Post*, 229 B.R. 379, 386 (Bankr. S.D. Tex. 1999)................3, 4

*In re Cumberland Farms, Inc.*, 175 B.R. 138 (Bankr. D. Mass., 1995)..................7

*In re Fairchild Aircraft Corporation*, 124 B.R. 488 (Bankr. W.D. Tex. 1991)..........2

*Koger Equity, Inc. v. Bexar County Appraisal Review Board*, 123 S.W.3d 502 (Tex. App. - San Antonio, 2003, no pet. h.)......................................................................2

### *Statutes*

11 U.S.C.A. § 505 (West 2005) ......................................................... 1-4, 6, 11-14

11 U.S.C.A. § 505(a)(1) (West 2005)......................................................................1

11 U.S.C.A. § 505(a)(2)(B)(I) (West 2005).............................................................1

28 U.S.C.A. § 505 (a)(2)(A) (West 2005) ..........................................6, 10, 11, 13

Tex. Tax Code Ann. § 1.111 (Vernon 2001) .....................................................2, 9

Tex. Tax Code Ann. § 25.25(c) (Vernon 2001) .....................................................5

iii

**The Bankruptcy Court Unequivocally Created, and Imposed a "Proper Protest" Requirement as to Unpaid 2001 Taxes**

At the beginning of their argument section, Appellees Tarrant County, City of Euless, Tarrant County College District and Grapevine-Colleyville ISD (collectively, the "Tax Authorities"), accurately framed the central issue of the appeal: "Whether the Bankruptcy Court improperly imposed a 'properly protest' requirement on debtors seeking relief under 11 U.S.C.A. § 505(a)(1) with respect to unpaid taxes, similar to the requirement of 'properly requesting' a refund with respect to paid taxes sought pursuant to 11 U.S.C.A. § 505(a)(2)(B)(I).  They then assert that no such requirement was imposed.

The Bankruptcy Court's memorandum opinion proves otherwise.  The final, dispositive paragraph of the opinion, immediately preceding its conclusion, is self-explanatory:

> "Similarly, the Debtors did not properly protest the 2001 tax assessment. This failure on the debtors' part leaves us without subject matter jurisdiction to address these taxes."

Memorandum Opinion Page 5.  (Emphasis added.)

**Appellees Admit that § 505 Exists to Remedy Protest Defects and Omissions by Failing Debtors**

The Tax Authorities next cite, approvingly, several of the many published opinions confirming that §505 was enacted to provide remedial protection from tax office overreaching in situations involving a "financially ailing debtor's inability or failure to contest" such excessive assessments.  Tax Authority Brief, Page 6

1

(citations omitted).  The three cases which the Tax Authorities cite, plus many others like them, not only correctly describe the remedial purposes underlying § 505, but in doing so highlight the logical disconnect inherent in the Third Circuit's holding in *In re Custom Distribution Services, Inc.*,  224 F.3d 235 (3rd Cir. 2000).

The Tax Authorities agree that Congress enacted § 505 (not to mention its statutory predecessor years before) as a remedy for a "financially failing debtor's inability or failure to contest" excessive tax assessments.  Years later, *Custom* and its progeny turned these assumptions literally "on their head," holding that the same "inability or failure to contest" was no longer the basis for relief under § 505, but would actually bar relief under that provision.  Congress' intent in enacting § 505 has thus been directly and unquestionably thwarted by the Third Circuit's holding.

**ANC's Unadjudicated Protests Do Not Bar Subsequent § 505 Relief**

As for **un**adjudicated state level administrative protest in Texas, such as were involved here, prior cases have held at such unadjudicated protests do **not** bar further procedural avenues.  *See, e.g., Koger Equity, Inc. v. Bexar County Appraisal Review Board*, 123 S.W.3d 502 (Tex. App. - San Antonio, 2003, no pet. h.).  Similarly, protests dismissed for failure of the taxpayer to appear at hearing do not bar subsequent actions brought under § 505.  *See, e.g., In re Fairchild Aircraft Corporation,* 124 B.R. 488 (Bankr. W.D. Tex. 1991).

The Tax Authorities also cite local Texas procedural provisions, such as Tax Code § 1.111, in an effort to bar relief under § 505.  However, it is well established

2

that "full faith and credit applies to the substantive aspects of state law only, and not to its procedural aspects." *In re Blue Cactus Post,* 229 B.R. 379, 386 (Bankr. S.D. Tex. 1999). Federal procedural law, including the underlying remedial purposes of § 505, take precedence over state procedural rules such as those relied upon by the Tax Authorities.

This point is particularly important here, given the above-quoted assumptions and remedial purposes underlying § 505. The withdrawal of the 2001 protest on which the Tax Authorities herein rely occurred just several months before ANC's failure and bankruptcy filing, in other words, in the very period just before a formal bankruptcy filing when "omissions" or other "inability" to effectively contest excessive assessments are common.

In the case in question, ANC (without the benefit of guidance by property tax consulting and legal expertise engaged after the bankruptcy filing) first protested, then withdrew that protest, evidencing uncertainty and inconsistency in its evaluation of tax assessments placed against its Tarrant County assets. It is no coincidence that similar protests filed the very next year, 2002, after ANC had filed for bankruptcy and engaged capable legal and consulting expertise, were pursued not only through formal appraisal review board hearing in Tarrant County, but on through District Court to Final Judgment. The same was true for 2003. Thus, penalizing ANC for the very type of inaction or incomplete actions, during the very period of presumed disability § 505 is intended to protect against, would be particularly unjust.

3

## County Level Unilateral Withdrawn Protests
## Do Not Override the Federal Bankruptcy Code

Next, the Tax Authorities attempt to treat the withdraw and protest as equivalent of a "motion to dismiss with prejudice" an ongoing litigation matter. (Appellee's brief, Page 9).  This analogy simply does not fit.  First, the subject protest was not a litigation matter.  Although some cases describe formal Appraisal Review Board hearings as "quasi judicial," these protests never even reached that administrative hearing stage.

Second, and perhaps more importantly, the question of the preclusive effect of the state protest and appeal procedure is one thing, but attempts to preclude the taxpayer, as a subsequent bankruptcy court debtor, from invoking remedial bankruptcy code provisions, is quite another.  Pertinent case law reminds us that the obligation to give "full faith and credit" to the laws of the state from which the tax in question originates "applies to the substantive aspects of state law only, and not to its procedural aspects." *In re Blue Cactus Post,* 229 B.R. 379, 386 (Bankr. N.D. Tex. 1998).  Moreover, "[t]he power to disregard the state's procedural requirements for protesting tax liabilities under the Bankruptcy Code goes to the very heart of the necessity for the determination by the bankruptcy court under § 505. *Id.*

Whether or not withdrawal of a protest accompanied by appropriate waiver language operates as a procedural bar to a second county-level protest is not the issue.  Such withdrawals do not even bar all forms of subsequent local procedures.

4

Requests for relief under distinct Texas Tax Code sections, such as, for example, § 25.25(c) authorizing correction of "clerical errors," "multiple assessments" and property incorrectly described as to form or location, remain available. Tex. Prop. Tax Code Ann. § 25.25(c)(Vernon 2001).

If even some repetitive county-level remedies are deemed waived, how can a protest withdrawn at this level somehow strip debtors of rights and remedies afforded them under Federal Bankruptcy Law,[1] particularly a unilateral act not even representing an actual "agreement" between taxpayer and appraisal office? That final distinction will be discussed in more detail below.

### *Custom Distribution* is Fatally Flawed Precedent

Regarding the anomalies and possible inconsistencies in the holding of the United States Court of Appeals for the Third Circuit in *In re Custom Distribution Services, Inc.*, 224 F.3d 235 (3rd Cir. 2000), ANC, like Appellees, has previously addressed the segment in various pleadings and previous briefing herein, including its Response to Tarrant Appraisal District's Motion to Dismiss, Appellants' brief herein and other pleadings in Court below, all of which are respectfully incorporated herein by reference as if set forth verbatim. Earlier in this Reply Brief, ANC also cited several of the Tax Authorities' own cases which further illustrate the logical inconsistencies between the Court's holding in *Custom Distribution* and the intent

---

[1] Were this possible, one would expect such waiver forms to, in fact, have gone much further in attempts to preclude subsequently-filing bankruptcy debtors from virtually every right afforded them under Federal Bankruptcy Law.

5

and purposes underlying § 505 as originally enacted.

ANC reiterates that a decision which, among other things, treated pending Bankruptcy Reform Act provisions as if already in force (*see Custom*, 224 F. 3rd, at 242[2]), ignored the oft-discussed legislative intent underlying § 505 generally and the limitations embodied in § 505 (a)(2)(A), loaded the single word "proper" with more implied (and in fact imaginary) meaning than any of the original draftsmen could have contemplated, and literally reversed the presumption of inaction and omissions underlying §505[3], defies rational justification. However, as the Tax Authorities make no effort in their brief to defend *Custom's* flawed reasoning, ANC stands by its original critique as included in its principal brief herein.

### *Custom Distribution* Unquestionably Had No Application to Challenges to Unpaid Taxes

Regardless, however, whether this Court accepts or rejects these inconsistencies as sufficient basis to distinguish the Third Circuit's holding here, as to the unpaid 2001 taxes, it is beyond question that the reasoning of *Custom Distribution* has no application to challenges to unpaid taxes. *Custom* dealt solely with the authority of U.S. Bankruptcy Courts to order tax <u>refunds</u>. Challenges to

---

[2]The *Custom* court cited, as alleged "further confirmation that the bankruptcy court's authority to determine refund rights are conditioned upon the debtor's compliance with the procedural requirements and limitation periods of the taxing authority," "language that was proposed in 1999 to be added to § 505(a)(2)." As it turned out, these provisions were not enacted until 2005, and were made effective only as to post- October 17, 2005 filings.

[3]The decision turns these, instead, into an improbable affirmative requirement of

SLI 576551v1/011002.00003

unpaid taxes were not involved, the Third Circuit went out of its way to acknowledge that the opinion did not apply to unpaid taxes, and that even in an offset situation (where a refund of paid taxes is sought, but as an offset against other liabilities rather than actual cash received), a different standard would apply.

ANC's primary brief filed previously on behalf of appellants' details, with specific case citations, the unmistakable fact that *Custom Distribution* has no application to situations involving challenges to unpaid taxes.  Similarly, *In re Cumberland Farms, Inc.,* 175 B.R. 138 (Bankr. D. Mass., 1995), upon which *Custom Distribution* heavily relies, made similar distinctions, noting that "[t]he Court's jurisdiction is quite different with respect to the unpaid 1992 taxes.  Unlike its provision concerning tax refund claims, § 505 contains no language showing deference to state procedural and unpaid taxes." *Id.*, 175 B.R., at 142.


**Tarrant Appraisal District's Assertions Are Directly Refuted by the Court's Opinion**

Regarding the points raised in the brief filed by Tarrant Appraisal District ("TAD"), several of these will be addressed in turn.  First TAD describes the appeal as dealing entirely with "the refund of unpaid taxes," (a logical impossibility since obviously only paid taxes can be subject to refund) "and the 'properly' language recited by the bankruptcy court."  Section F.2. of TAD's briefing argument begins

---

diligence, thoroughness and timeliness on the part of these same failing companies.

SL1 576551v1/011002.00003

with the claim that *"the bankruptcy court did not impose a 'properly protest' requirement on ANC ..."* However, quoting directly from the bankruptcy court's written memorandum opinion:

> "Similarly, the debtors did not <u>properly protest</u> the 2001 tax assessment. This failure on the debtors' part leaves us without subject matter jurisdiction to address these taxes."

Memorandum of Opinion, Page 5 (emphasis added). It is difficult to imagine a more direct imposition of a "properly protest" requirement as to the unpaid 2001 taxes.

TAD also, like the Tarrant County Tax Authorities, alleges that ANC's adversary claims are barred by a purported written "agreement" between ANC and the Appraisal District, comparing the situation to one where the taxpayer specifically negotiates a formal agreement to a specific appraisal number with local appraisal authorities, and reduces that specific assessed value agreement to writing. Elsewhere in this brief, ANC addresses the timing of this 2001 protest withdrawal shortly before ANC's bankruptcy filing and the inequity, within the broader context of the remedial purposes underlying § 505, of any decision which would penalize ANC for its fitful and inconsistent protest activities on the eve of bankruptcy.

However, here one need not reach the deeper question of enforcing settlement "agreements" entered into by a failing debtor on the eve of bankruptcy, because in fact there was no "agreement." TAD refers to a purported "2001 agreement" entitled "**Settlement** and Waiver of Protest." In fact, however, the document TAD relies on, actually contains the phrase "**Withdrawal** and Waiver of Protest," is attached TAD's previous motion to dismiss in the court below, and is,

8

as the title reflects, a "Tarrant Appraisal Review Board Withdrawal Request" withdrawing ANC's previously-filed protest.

### There Was No "Agreement" Between ANC and the Chief Appraiser

Printed form language over the signature line on the protest withdrawal request contains the language quoted in TAD's brief. However, this was not an "agreement," which by definition assumes two parties and some exchange of consideration. ANC unilaterally withdrew a previously-filed protest. No return consideration is reflected, nor is there any evidence of a more favorable valuation as a result of the withdrawal. It was simply a unilateral act withdrawing the protest. The same is true for 1999 (although ANC acknowledges the additional legal complications of 1999 taxes having been paid and no subsequent formal refund request having been presented).

Much like TAD, the Tarrant County Tax Authorities, in their own briefing, attempt to turn this protest waiver into something it is not, citing Texas Tax Code § 1.111 dealing with an "<u>agreement</u> between a property owner or the owner's agent <u>and the chief appraiser</u>" relating to a matter "which may be protested to the Appraisal Review Board." Tarrant Tax Authority Brief, p. 8. In fact, however, there was no agreement whatsoever signed by the chief appraiser or any other Tarrant Appraisal District staff member, and no specific decision reflected concerning the subject of the underlying protest, namely value. Instead, ANC unilaterally withdrew the protest. This constitutes neither an "agreement" nor an "adjudication."

9

**There Were No "Adjudications," Nor Did the Bankruptcy Court So Hold**

At its Answering Brief p. 5, TAD, ignoring the express language in the memorandum opinion unequivocally imposing a "properly protest" requirement, improbably argues that *"this court need only look to the undisputed facts developed in the bankruptcy court to determine that it did not impose such a requirement on ANC*." TAD Brief, Page 5. TAD goes on to represent as purported undisputed facts developed in the bankruptcy court's opinion that (1) *"ANC timely filed administrative protests over the valuation of their property ..."* (this much is true), (2) "*ANC subsequently agreed with these valuations*" (both the record and memorandum opinion are devoid of support for this false assertion, and that ANC (3) *"withdrew its protests and waived all further rights to proceed with a protest or appeal.*"

On this last point, the Bankruptcy Court's actual statement was that ANC *"withdrew these protests before any adjudication could be made*." Memorandum Opinion, p.3. TAD's self-serving "paraphrase" of the Bankruptcy Court's language was likely no accident, since the court's actual wording directly refutes TAD's assertion in the very next paragraph of its brief, to wit: that the withdrawn protests (which TAD continues to mischaracterize as "agreements"), constitute "final adjudications" for purposes of Bankruptcy Code § 505(a)(2)(A).

Notwithstanding TAD's rhetorical flourish, there is nothing "astounding" about ANC describing the protest withdrawals as what they were: unilateral withdrawals of filed protests, accompanied by the "boilerplate" labor language

10

contained on the forms.  Perhaps a bit "astounding" is TAD's purported reliance on "undisputed facts developed in the bankruptcy court," then concealment, by the above-referenced "paraphrasing," of the court's specific statement that ANC "withdrew these protests <u>before any adjudication could be made</u>."

### TAD and the Tax Authorities Rely on Mutually Inconsistent Positions

Obviously a protest withdrawn "before" any adjudication cannot magically become an adjudication.  This basic inconsistency flows from TAD having tried to, quite literally, "have it both ways" in its arguments, both in the court below and here on appeal.  Despite repeated insistence that no "properly protest" requirement as to unpaid taxes was either sought or imposed, in fact TAD did just that, arguing in the court below that because ANC withdrew its protests prior to any adjudication, they had failed to properly pursue their protest rights.

The Bankruptcy Court so held, creating, out of thin air, a "properly protest" requirement which is nowhere to be found in § 505.  Simultaneously, TAD argued that the protest withdrawals were in fact "agreements" (despite the complete absence of the basic elements of contract) and not merely agreements but in fact "adjudications" for purposes of § 505(a)(2)(A), this last claim advanced despite the waiver forms reflecting no decision or other action by an adjudicative body, administrative or judicial.

Moreover, the Bankruptcy Court's opinion includes no indication that the court accepted this farfetched "adjudication" argument.  Instead, the court held that

11

ANC "did not properly protest the 2001 tax assessment" presumably because ANC *"withdrew the protests before any adjudication could be made."* TAD never cross-appealed on the grounds that the withdrawn protests purportedly constituted adjudications, and thus may not advance such an argument here, absent supporting findings or rulings by the court below.

At the bottom of Page 5 of its brief, TAD repeats the bizarre claim that "there are no facts to support the argument made by ANC that the court imposed a 'properly protest' requirement on ANC." One need only return to the court's unequivocal language in page 5 of the memorandum opinion to conclude otherwise. As for Texas Appraisal Review Board's exercising "quasi-judicial" functions, ANC acknowledges that case law, but would show that it has no application here since the subject protests were never adjudicated by the Tarrant County Appraisal Review Board.

TAD, like the Tarrant County Tax Authorities, acknowledges the body of case law describing the remedial purposes underlying Code § 505 to protect against the results of financially distressed debtors who, due to those exigencies, "fail to exercise sufficient diligence to invoke the available processes under state law to contest tax assessments." Here, ANC instituted fitful protest efforts at the local county level just months before filing for bankruptcy, but then withdrew those protests, unilaterally. They failed to take the protests even to the initial step of a hearing before the Appraisal Review Board, let alone on to district court appeal and judgment, (such as ANC pursued to conclusion in subsequent tax years 2002 and

12

2003). Such filed, then withdrawn, protests are classic examples of a distressed and distracted taxpayer, "failing to exercise sufficient diligence," the exact type of situation which *City of Amarillo v. Eakens,* 399 F.2d 541 (5th Circuit 1968) and similar cases recognize that § 505 was enacted to address.

Throughout its brief, TAD continues to mislead the court with not only discussion but the very headings of its briefing sections. Section Heading 2, the infamous "*The Bankruptcy Court did not impose a 'properly protests' requirement . . . .*" heading, is followed on page 8 by Section Heading 4 (No. 3 appears inadvertently omitted) asserting that *"The Bankruptcy Court correctly determined that the written agreement between the parties was final adjudication that cannot be disputed by the parties or an appraisal review board."*

In fact, and as readily evident from even a cursory reading of the brief memorandum opinion, the bankruptcy court did no such thing. Not only was there, on the face of the documents upon which TAD relies, no written "agreement," merely a unilateral protest withdrawal, but the Bankruptcy Court never found there to have been an adjudication. In fact, to the contrary, the court found the protests to have been withdrawn before adjudication. Section 4 thus begins with a false premise, followed by a equally inaccurate argument.

TAD entitles its final argument section "*ANC agrees that it is barred from seeking relief under § 505.*" Were that the case the Court would not be reading this reply brief. ANC acknowledges the express wording of § 505(a)(2)(A) barring § 505 relief where there has been a pre-petition contest and an actual pre-petition

13

adjudication of that contest. Here there has been no "adjudication." The abortive protests reached not even local county appraisal review board levels, let alone district court. Absent an "adjudication," the limitation on § 505 relief does not apply.

## Conclusion

For the following reasons, Plaintiff prays that this matter be remanded to the U.S. Bankruptcy Court for further proceedings, in its entirety, that in the alternative the Court remand the causes of action concerning unpaid 2001 taxes to the Bankruptcy Court for further proceedings and hearings on the merits consistent with the relief requested by ANC on appeal, and that debtors/appellants have and recover further and such other relief to which they may show themselves justly entitled.

Dated, September 30, 2005

STEVENS & LEE, P.C.

Joseph Grey (No. 2358)
Thomas G. Whalen, Jr. (No. 4034)
1105 North Market Street, Seventh Floor
Wilmington, DE 19801
Telephone: (302) 654-5180
Telecopier: (302) 654-5181

Joseph M. Harrison IV
J.M. HARRISON & ASSOCIATES
1009 C Street, Suite 200
Floresville, Texas 78114-2223
Telephone: (830) 393-0500
Telecopier: (830) 393-04941
ATTORNEYS FOR APPELLANTS

14